SKC

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald Vaughn Gwen,<br><br>            Plaintiff,<br><br>v.<br><br>Core Civic, et al.,<br><br>            Defendants. | No.  CV 21-02150-PHX-JAT (JFM)<br><br>**ORDER** |

Plaintiff Gerald Vaughn Gwen, who is currently confined in the Red Rock Correctional Center (RRCC) in Eloy, Arizona, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. Defendants Correctional Officers (COs) Green, Fimbres[1], and Macias move for summary judgment. (Doc. 52.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 54), and he opposes the Motion. (Doc. 59.) Defendants filed a Reply. (Doc. 63.)

The Court will grant the Motion for Summary Judgment and dismiss this action.

. . . .

. . . .

---

[1] Plaintiff named Defendant CO F. Leon, not CO Fimbres, in his First Amended Complaint, but in their Answer, Defendants stated that "Defendant Leon is Defendant Fimbres" (Doc. 14 at 1, n.1), and in subsequent filings, Plaintiff and Defendants have used the name Fimbres, not Leon. (*See, e.g.*, Docs. 21, 25, 27, 29, 35, 40.) For ease of reference, the Court will refer to Defendant Leon as Defendant Fimbres.

**I.      Background**

On screening Plaintiff's three-count First Amended Complaint under 28 U.S.C. § 1915A(a), the Court determined Plaintiff stated an Eighth Amendment medical care claim in Count Two against Defendants Green, Fimbres, and Macias for allegedly intentionally discarding Plaintiff's medications and extra pillow authorized by the medical department during Plaintiff's move to a different prison unit. (Doc. 9 at 13.) The Court directed these Defendants to answer the claim and dismissed the remaining claims and Defendants. (*Id.* at 17−18.)

Defendants move for summary judgment based on failure to exhaust administrative remedies and on the merits.

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.  Exhaustion**

**A.  Legal Standard**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

**B.     Facts**[2]

**1.     RRCC's Grievance Procedures**

The Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR) Department Order (DO) 802, Inmate Grievance Procedure, sets forth the grievance procedures prisoners must follow at RRCC. (Doc. 53, DSOF ¶ 65.) Upon arrival at RRCC, prisoners are provided a copy of the Arizona Inmate Handbook ("Handbook"), which directs them to follow the grievance procedures set forth in DO 802. (*Id.* ¶¶ 64−66.) Copies of the Handbook and DO 802 are available to prisoners in the RRCC library. (*Id.* ¶ 68.) Plaintiff received a copy of the Handbook and verbal instruction on the grievance procedures during the general prisoner orientation conducted by RRCC staff, and the grievance process was available to him at all relevant times at RRCC. (*Id.* ¶¶ 67, 73.)

DO 802.01, Section 1.1 states that "[t]he Inmate Grievance Procedure is designed to address inmate complaints related to any aspect of institutional life or condition of

---

[2] The facts are based on Defendants' Statement of Facts (DSOF) and supporting evidence. (Doc. 53, Doc. 53-1−6.) Plaintiff failed to comply with the Court's *Rand* Order and Local Rule of Civil Procedure 56.1(b) for responding to a motion for summary judgment and did not file a separate statement of facts, setting forth for each paragraph in Defendant's Statement of Facts a correspondingly numbered paragraph "indicating whether [he] disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting [his] position." (*See* Doc. 54 at 2; LRCiv. 56.1(b).) In his Response and separately filed declaration, Plaintiff also failed to clearly articulate or cite to any evidence in response to Defendants' Motion. (Docs. 59, 60.) Instead, he merely reiterated purported discovery issues he raised in multiple prior Motions that the Court already addressed, frequently by providing detailed instructions and citations to the relevant rules and procedures for filing such motions. Rather than re-address the same issues here, the Court refers Plaintiff to its past Orders. (*See* Docs. 30, 34, 41, 47, 57, 65, 67, 69.) Considering Plaintiff's pro se status, the Court will, where relevant, include facts from Plaintiff's verified First Amended Complaint. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence).

confinement that directly and personally affects the inmate grievant, including . . . the actions of staff." (*Id.* ¶ 69.)

Under DO 802, prisoners must first attempt to resolve their issues informally, either by discussing them with staff or by submitting an Inmate Informal Complaint Resolution. The informal complaint must be submitted within 10 workdays of the of the date of the action that caused the complaint, and a CO III must provide a response within 15 days of receiving the informal complaint. (*Id.* ¶¶ 75−76.)

If the prisoner is dissatisfied with the response to his informal complaint, he may file a formal grievance within 5 days of that response. (*Id.* ¶ 77.) The formal grievance is assigned a grievance number and logged in the facility Grievance Log, and a copy of it is maintained in the grievance file. (*Id.* ¶ 79.) Within 15 days of receipt of the formal grievance, the Deputy Warden must issue a response. (*Id.* ¶ 80.) If the prisoner is dissatisfied with the Deputy Warden's response, he may appeal the decision by submitting a Grievance Appeal to the Director within 5 workdays of receiving the response. (*Id.* ¶ 81.) The Director's response is final and ends the administrative remedy process. (*Id.* ¶ 82.)

At any stage of this process, unless the prisoner is notified of an extension of the time for a response, the expiration of the time for a response entitles the prisoner to move to the next stage of the process, even without a response. (*Id.* ¶ 78.)

### 2. Plaintiff's Grievance History

RRCC Grievance Coordinator T. Hansen has access to all RRCC grievance records. (Doc. 53-5, Ex. 5, Hansen Decl. ¶ 32.) According to Hansen, Plaintiff submitted an Inmate Informal Grievance Complaint on October 26, 2021, complaining he was missing personal property and medications since being moved to detention because he was not permitted to pack and transport his own belongings. (DSOF ¶ 83.) Plaintiff did not mention an extra pillow or pillow wedge as part of his missing belongings. (*Id.*)

On November 17, 2021, Hansen submitted a notice to Plaintiff that the timeframe for a response had been extended, with a response due from the CO on November 19, 2021, and a response due to Plaintiff due by December 3, 2021. (*Id.* ¶ 84.) Plaintiff and CO III

Bissell signed the notice. (*Id.*)

On December 1, 2021, CO III Bissell responded to Plaintiff's informal complaint, stating,

> After a thorough investigation and review of your property file, I did not find that staff have been negligent with your property, per DO 909 your property was inventoried by 2 staff members and delivered to detention. Upon receipt of your property another staff member initialed in the receiving column to verify that your items were accounted for in detention. By signing the property inventory form, you are certifying that the inventory is a true and accurate accounting of your notes from either you or the staff members [claiming] that there is missing property. A review of your property file does reflect that you have made many purchases, however, proof of purchase does is [sic] not proof of retention. It is possible you either gave, traded or sold the items purchased. I am denying your request for replacement or reimbursement. If you do not agree with my response you may continue in the 802 process-inmate grievance procedures.

(*Id.* ¶ 85.) Plaintiff had 5 workdays, meaning until December 8, 2021, to submit an Inmate Grievance on this matter. (*Id.* ¶ 86.) Even if he did not receive CO III Bissell's response, Plaintiff would have had 5 workdays from December 3, 2021—the date the extended timeframe for a response expired—meaning by December 10, 2021, to proceed to the next level of review by filing an Inmate Grievance. (*Id.*)[3]

On December 29, 2021, Plaintiff submitted an Inmate Grievance, stating in part,

> I placed an inmate first informal regarding lost or destroyed property while I was transferred to CDU. First sent to CO III Sanchez, then transferred to CO III Bissel Fox Unit. I approved an extension for Bissel to file a response on

---

[3] Hansen claims Plaintiff would have had until December 8, 2021 to move to the next level, but this is inconsistent with Defendants' evidence showing the extended deadline for a response to Plaintiff's informal complaint was December 3, 2021. The Court infers in Plaintiff's favor that Plaintiff had 5 business days from December 3, 2021 to proceed to the next level, and taking judicial notice that December 4 and 5, 2021, were a Saturday and Sunday and did not count in the number of days, Plaintiff had until December 10, 2021 to file a Formal Grievance.

> November 17, 2021 and have yet to receive a response to the
> original complaint.

(*Id.* ¶ 87.) Upon receipt of this Inmate Grievance, Hansen verified with CO III Bissell that Bissell had returned his informal complaint response to Plaintiff on December 1, 2021. (*Id.* ¶ 88.) On January 5, 2022, Hansen responded to Plaintiff's Inmate Grievance, informing Plaintiff of what Bissell had told her and stating that, even if Plaintiff had not received Bissell's response by the extended due date, he could have proceeded to the next stage of the grievance process as if he had received a response, but he had not timely done so. (*Id.*) Hansen wrote that she considered the matter resolved. (*Id.*)

On January 17, 2022, Plaintiff submitted an Inmate Grievance Appeal, complaining that Hansen's response was inadequate because Plaintiff clearly stated he had not received a response to his Inmate Informal Complaint, and there was no evidence CO III Bissell had conducted a thorough investigation. (*Id.* ¶ 89.) Plaintiff requested a proper and thorough investigation of his property issue. (*Id.*)

On February 22, 2022, Appeals Officer M. Stephen responded to Plaintiff's Grievance Appeal on behalf of Director Shinn, stating that Plaintiff's Formal Grievance had been unprocessed due to it being received more than 5 days from when Plaintiff received the informal complaint response, and Plaintiff had not provided any justification for why his Formal Grievance was untimely. (*Id.* ¶ 90.) M. Stephen wrote that "[n]o further action is warranted in this matter." (*Id.*)

### 3. Discussion

Defendants have made an initial showing that Plaintiff had administrative remedies available to him to grieve Defendants' alleged confiscation of his medications and medically prescribed pillow during transfer, and he failed to properly exhaust those remedies. Although Plaintiff filed an Informal Complaint about the loss of these items on October 26, 2021, the evidence shows CO III Bissell responded to this Informal Complaint within the extended timeframe on December 1, 2021, and Plaintiff did not timely proceed to the next level of the grievance process. Taking as true that Plaintiff never received

Bissell's December 1, 2021 response, Plaintiff still had administrative remedies available to him because he could have submitted a Formal Grievance, even without a response, within 5 workdays of the day a response was due, in this case by December 10, 2021. Instead, Plaintiff did not file a Formal Grievance until December 29, 2021, twenty-one days after the latest date he was required to do so, and Hansen unprocessed that Formal Grievance because it was untimely.

Because Defendants have made an initial showing that Plaintiff had administrative remedies available to him, and he failed to exhaust those remedies according to the prison regulations for doing so, the burden shifts to Plaintiff to show that he either did exhaust or that "something in his particular case . . . made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. As previously noted, Plaintiff filed a Response to Defendants' Motion for Summary Judgment, but he did not file a controverting statement of facts; nor did he include any facts about exhaustion in his Response or declaration that would create a genuine issue of material fact as to Defendants' showing. The form complaint Plaintiff used to file his First Amended Complaint also only required Plaintiff to check boxes stating whether he did or did not exhaust his administrative remedies. Although Plaintiff checked that he had exhausted his administrative remedies (Doc. 8 at 9), conclusory checkmarks are not enough to create a genuine issue of material fact as to Defendants' showing that Plaintiff's attempt to do so was untimely. On this record, Plaintiff failed to exhaust his administrative remedies, and the Court will grant Defendants' Motion for Summary Judgment on this basis. *See Woodford*, 548 U.S. at 92 (prisoner must complete the administrative review process in accordance with the applicable rules before filing suit).

Because the Court will dismiss Defendants and this action based on failure to exhaust, the Court need not discuss Defendants' additional arguments that Plaintiff's Eighth Amendment medical care claim against them fails on the merits.

. . . .

. . . .

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 52).

(2) Defendants' Motion for Summary Judgment (Doc. 52) is **granted**, and Defendants and this action are **dismissed** without prejudice for failure to exhaust administrative remedies. The Clerk of Court must terminate this action and enter judgment accordingly.

Dated this 5th day of May, 2023.

James A. Teilborg
Senior United States District Judge